**Slip Op. 11-** 135

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| THE CONTAINER STORE, | : | |
| *Plaintiff,* | : | |
| v. | : | Court No. 05-00385 |
| UNITED STATES, | : | |
| *Defendant.* | : | |

[Plaintiff's motion for summary judgment is granted; Defendant's cross-motion is denied.]

Dated:  October 26, 2011

Frances P. Hadfield, Alan R. Klestadt, and Robert B. Silverman, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of New York, NY, for plaintiff.

Marcella Powell, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant. With her on the brief were Tony West, Assistant Attorney General, Michael F. Hertz, Deputy Assistant Attorney General, and Barbara S. Williams, Attorney in Charge. Of counsel on the brief was Paula S. Smith, Office of the Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, of New York, NY.

**OPINION**

RIDGWAY, Judge:

In this action, Plaintiff The Container Store ("Container Store") challenges the decisions of

the Bureau of Customs and Border Protection[1] denying Container Store's protests of Customs'

classification of two items – specifically, "top tracks" and "hanging standards" – which are

---

[1]The Bureau of Customs and Border Protection – part of the U.S. Department of Homeland Security – is commonly known as U.S. Customs and Border Protection. The agency is referred to as "Customs" herein.

components of Container Store's elfa® modular organization and storage system.

Container Store contends that elfa® top tracks and hanging standards are classifiable as "[o]ther furniture and parts thereof," under heading 9403 of the Harmonized Tariff Schedule of the United States ("HTSUS") (and, more specifically, under subheading 9403.90.80), and are therefore duty-free. *See generally* Subheading 9403.90.80, HTSUS;[2] Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 1, 3, 7-11, 21 ("Pl.'s Brief"); Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Cross-Motion for Summary Judgment at 1, 5-8, 22 ("Pl.'s Reply Brief"); Sur-Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 3-5, 12-13 ("Pl.'s Sur-Reply Brief"). In contrast, the Government maintains that the top tracks and hanging standards are properly classified under heading 8302, which covers "[b]ase metal mountings, fittings and similar articles" – and, more specifically, under subheading 8302.41.60, dutiable at the rate of 3.9% *ad valorem*. *See generally* Subheading 8302.41.60, HTSUS; Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment at 3, 12-22 ("Def.'s Brief"); Reply Memorandum in Further Support of Defendant's Cross Motion for Summary Judgment at 1-2, 13-19 (Def.'s Reply Brief").

Cross-motions for summary judgment are pending. Jurisdiction lies under 28 U.S.C. § 1581(a) (2000).[3] Pursuant to the Court of Appeals' recent decision in storeWALL, elfa® "top tracks" and "hanging standards" are properly classified under heading 9403, "[o]ther furniture and

---

[2]All citations to the HTSUS herein are to the 2002 edition.

[3]All statutory citations herein (other than citations to the HTSUS) are to the 2000 edition of the United States Code.

parts thereof," and, more specifically, as "parts" under subheading 9403.90.80. *See generally*

storeWALL, LLC v. United States, 644 F.3d 1358 (Fed. Cir. 2011); Subheading 9403.90.80,

HTSUS.  Container Store's motion for summary judgment therefore must be granted, and the

Government's cross-motion denied.[4]

## I. **Background**

The two products at issue in this matter – top tracks and hanging standards – are components

of Container Store's elfa® system, which were manufactured in Sweden and imported into the

United States between 2002 and 2004.[5]  Much like the system at issue in storeWALL, the elfa®

system is a customizable, modular system of components that can be combined in a wide range of

configurations to meet the organization and storage needs of individual consumers in their homes

and offices.  *See generally* storeWALL, 644 F.3d at 1360 (describing storeWALL system);

storeWALL, LLC v. United States, 33 CIT ____, ____, 675 F. Supp. 2d 1200, 1202 (2009), *rev'd*,

644 F.3d 1358 (Fed. Cir. 2011) (same).

Top tracks and hanging standards are the core components of the elfa® system, and are made

of epoxy-bonded steel.  The top track has a flat back and is designed to be fastened horizontally to

a perpendicular surface (typically a wall or a door), using anchors and screws.  The top and bottom

---

[4]Container Store has voluntarily dismissed Protest Number 5501-04-150010. *See* Pl.'s Brief at 1 n.1; Agreed Statement of Facts [as] to Which No Genuine Issue Exists ¶ 3.

[5]All material facts set forth herein concerning the elfa® system are uncontested, and are drawn from the parties' Agreed Statement of Facts [as] to Which No Genuine Issue Exists, from Plaintiff's Separate Statement of Material Facts as to Which No Genuine Issue Exists and Defendant's Response thereto, from Defendant's Statement of Undisputed Material Facts and Plaintiff's Response thereto, and from the samples of the merchandise at issue (which were filed with the Government's cross-motion).

edges of the top track protrude and bend downward and upward, respectively, to form the top track's "upper lip" and "lower lip." Hanging standards are specifically designed to be suspended from a top track – without the use of any hardware – by means of a groove that hooks onto the top track's "lower lip." Before a hanging standard can be hooked onto the "lower lip" of a top track, however, the hanging standard must be inserted through notches in the top track's "upper lip" (which are also the sole means of removing a hanging standard from a top track). Those notches, together with the overhanging design of the "upper lip" of the top track, prevent hanging standards from inadvertently slipping off a top track. Hanging standards must be used with a top track, and cannot be mounted directly onto a wall or door.

Top tracks and hanging standards serve as the "backbone" of the elfa® system, and are designed to be used exclusively with other elfa® system components. Top tracks and hanging standards alone do not constitute a complete elfa® system, and, unless accessorized with other elfa® components, cannot be used to organize or store anything. However, depending on the needs of the individual consumer, elfa® components that are not at issue here – including drawers, baskets, and shelves – can be attached to hanging standards, in customized configurations. Other elfa® components, such as utility hooks, can be attached directly to a top track.

Top tracks and hanging standards may or may not be imported together, and may or may not be imported with other elfa® components. Components of the elfa® system are sold both separately and in various combinations, to meet the needs of individual consumers.

Customs liquidated the elfa® top tracks and hanging standards at issue here under HTSUS

subheadings 8302.41.60[6] and 8302.42.30[7] (which cover "[b]ase metal mountings, fittings and similar articles," suitable for "buildings" or "furniture," respectively), as well as subheading 7326.90.85 (which covers "[o]ther articles of iron or steel"),[8] assessing duties at rates ranging from 2.9% to 3.9% *ad valorem*. Container Store filed several protests, arguing that elfa® top tracks and hanging standards are properly classifiable as "[o]ther furniture and parts thereof," under HTSUS subheading 9403.90.80.[9] Customs denied Container Store's protests, and issued two ruling letters addressing the classification of the merchandise. Headquarters Ruling ("HQ") 966458 classified the top tracks and hanging standards as "mountings" under subheading 8302.41.60. *See* HQ 966458 (June 19, 2003). After Container Store requested reconsideration of HQ 966458, Customs issued a "clarified" ruling, reaffirming the agency's classification of top tracks and hanging standards under subheading 8302.41.60, but revising the agency's legal rationale. *See* HQ 967149 (Nov. 2, 2004).

---

[6]Subheading 8302.41.60 covers "Base metal mountings, fittings and similar articles suitable for furniture, doors, staircases, windows, blinds, coachwork, saddlery, trunks, chests, caskets or the like; base metal hat racks, hat-pegs, brackets and similar fixtures; castors with mountings of base metal; automatic door closers of base metal; and base metal parts thereof: . . . Other mountings, fittings and similar articles, and parts thereof: Suitable for buildings: . . . Other:  Of iron or steel, of aluminum or of zinc." *See* Subheading 8302.41.60, HTSUS.

[7]Subheading 8302.42.30 covers "Base metal mountings, fittings and similar articles suitable for furniture, doors, staircases, windows, blinds, coachwork, saddlery, trunks, chests, caskets or the like; base metal hat racks, hat-pegs, brackets and similar fixtures; castors with mountings of base metal; automatic door closers of base metal; and base metal parts thereof: . . . Other mountings, fittings and similar articles, and parts thereof: . . . Other, suitable for furniture: Of iron or steel, of aluminum or of zinc." *See* Subheading 8302.42.30, HTSUS.

[8]Subheading 7326.90.85 covers "Other articles of iron or steel: . . . Other: . . . Other: . . . Other: . . . Other." *See* Subheading 7326.90.85, HTSUS.

[9]Subheading 9403.90.80 covers "Other furniture and parts thereof: . . . Parts: . . . Other: . . . Other." *See* Subheading 9403.90.80, HTSUS.

This action followed.

## II.  **Standard of Review**

Customs classification decisions are reviewed *de novo*, through a two-step analysis. *See* 28 U.S.C. § 2640; <u>Faus Group, Inc. v. United States</u>, 581 F.3d 1369, 1371-72 (Fed. Cir. 2009).  The first step of the analysis addresses the proper meaning of the relevant tariff provisions, which is a question of law.  The second step involves determining whether the merchandise at issue falls within a particular tariff provision as construed.  *See id.* (*citing* <u>Orlando Food Corp. v. United States</u>, 140 F.3d 1437, 1439 (Fed. Cir. 1998)).

Under USCIT Rule 56, summary judgment is appropriate where "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  *See* USCIT R. 56(c).  Summary judgment is thus appropriate in a customs classification case if there is no genuine dispute of material fact (because the nature of the merchandise at issue is not in question), such that the decision on the classification of the merchandise turns solely on the proper meaning and scope of the relevant tariff provisions.  *See* <u>Faus Group</u>, 581 F.3d at 1371-72.  Here, the parties disagree as to the meaning and scope of the tariff provisions at issue.  However, there are no genuine disputes of material fact.  In the absence of any such dispute, this matter is ripe for summary judgment.

Although Customs' classification decisions are entitled to "a respect proportional to [their] 'power to persuade,'" they do not merit <u>Chevron</u> deference.  <u>United States v. Mead Corp.</u>, 533 U.S. 218, 235 (2001) (*citing* <u>Christensen v. Harris County</u>, 529 U.S. 576, 587 (2000); <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944)).  Further, the statutory presumption of correctness that Customs'

classification decisions enjoy under 28 U.S.C. § 2639(a)(1) has no effect – as a practical matter –

at the summary judgment stage, because "the presumption carries no force as to questions of law."

Universal Electronics, Inc. v. United States, 112 F.3d 488, 492-93 (Fed. Cir. 1997); *see also*

Rollerblade, Inc. v. United States, 112 F.3d 481, 483-84 (Fed. Cir. 1997); Goodman Mfg., L.P. v.

United States, 69 F.3d 505, 508 (Fed. Cir. 1995).

### III. Analysis

The tariff classification of all merchandise imported into the United States is governed by

the General Rules of Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation

("ARIs"), which provide a framework for classification under the HSTUS, and are to be applied in

numerical order. *See* BASF Corp. v. United States, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007); 19

U.S.C. § 1202.[10] Most merchandise is classified pursuant to GRI 1, which states that "classification

shall be determined according to the terms of the headings and any relative section or chapter notes

and, provided such headings or notes do not otherwise require, according to [GRIs 2 through 6]."

*See* GRI 1, HSTUS.  Only when the headings and Chapter and Section Notes do not themselves

determine classification does one look to the subordinate GRIs. *See* Mita Copystar America v.

United States, 160 F.3d 710, 712 (Fed. Cir. 1998).

---

[10]The HSTUS consists of the General Notes, the General Rules of Interpretation ("GRIs"), the Additional U.S. Rules of Interpretation ("ARIs"), and Sections I to XXII of the HSTUS (including Chapters 1 to 99, together with all Section Notes and Chapter Notes, article provisions, and tariff and other treatment accorded thereto), as well as the Chemical Appendix. *See* BASF Corp., 482 F.3d at 1325-26; Libas, Ltd. v. United States, 193 F.3d 1361, 1364 (Fed. Cir. 1999) (noting that the HSTUS "is indeed a statute but is not published physically in the United States Code") (*citing* 19 U.S.C. § 1202).  The terms of the HSTUS are "considered 'statutory provisions of law for all purposes.'" *See* Alcan Aluminum Corp. v. United States, 165 F.3d 898, 904 n.5 (Fed. Cir. 1999) (internal citation omitted).

The first step in a classification analysis is thus to construe the terms of the headings of the HTSUS, together with any pertinent Section and Chapter Notes (which are statutory law), to determine whether they require a specific classification. *See* Avenues in Leather, Inc. v. United States, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (explaining that Section Notes and Chapter Notes "are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202") (internal quotation marks omitted); Degussa Corp. v. United States, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (stating that the "section and chapter notes are integral parts of the HTSUS, and have the same legal force as the text of the headings").

Tariff terms are construed in accordance with their common and commercial meanings; and a court may rely both on its own understanding of a term and on lexicographic and scientific authorities. *See* Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003). Also instructive are the Harmonized Commodity Description and Coding System's Explanatory Notes ("Explanatory Notes"), "which – although not controlling – provide interpretive guidance." *See* E.T. Horn Co. v. United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004) (citation omitted); *see also* storeWALL, 644 F.3d at 1362, 1363 (noting proper role of Explanatory Notes, and explaining that storeWALL trial court "appropriately looked to the Explanatory Notes for clarification" in defining term "unit furniture," as that term is used in the Chapter Notes to Chapter 94 of the HTSUS).[11]

---

[11]The Explanatory Notes are the official interpretation of the Harmonized Commodity Description and Coding System (on which the HTSUS is based), as set forth by the World Customs Organization (the same body which drafts the international nomenclature). *See* Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1360 (Fed. Cir. 2001) (noting that Explanatory Notes are "prepared by the World Customs organization to accompany the international harmonized schedule"). As Congress has recognized, the Explanatory Notes "provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system." H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess.

The issue presented by the pending motions is whether elfa® top tracks and hanging

standards are properly classifiable under heading 8302 as "[b]ase metal mountings, fittings and

similar articles," or under heading 9403 as "[o]ther furniture and parts thereof." The Section Notes

for Section XV of the HTSUS (which includes Chapter 83) specifically exclude "[a]rticles of chapter

94" (such as furniture) from classification under Section XV. *See* Section Note 1(k) to Section XV,

HTSUS.[12] Therefore, if top tracks and hanging standards are classifiable under heading 9403, they

cannot be classified under heading 8302.[13] Thus, the threshold question to be answered is whether

---

549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582; *see also* Guidance for Interpretation of
Harmonized System, 54 Fed. Reg. 35,127, 35,128 (Aug. 23, 1989) (noting that the Explanatory
Notes provide a commentary on the scope of each heading of the HTSUS, and are the official
interpretation of the Harmonized System at the international level). The Explanatory Notes are
therefore highly authoritative – "persuasive" and "'generally indicative of the proper interpretation
of a tariff provision.'" Agfa Corp. v. United States, 520 F.3d 1326, 1329-30 (Fed. Cir. 2008)
(*quoting* Degussa Corp. v. United States, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (citation omitted))

[12]Specifically, Section Note 1(k) to Section XV of the HTSUS (which includes Chapter 83),
provides:

This section does not cover: . . .

    (k)    Articles of chapter 94 . . .

Section Note 1(k) to Section XV, HTSUS.

[13]The Government asserts that, by the same token, "if imported merchandise is classifiable
in heading 8302, it cannot be classified in Chapter 94." *See* Def.'s Brief at 7. Chapter Note 1(d) to
Chapter 94 provides:

This chapter does not cover: . . .

    (d)    Parts of general use as defined in note 2 to section XV, of base metal
        (section XV), similar goods of plastics (chapter 39), or safes of
        heading 8303; . . .

Chapter Note 1(d) to Chapter 94, HTSUS. The phrase "parts of general use" is defined in Section

elfa® top tracks and hanging standards are properly classifiable under heading 9403, as Container

Store contends.  Under the Court of Appeals' decision in storeWALL, the answer to this question

is unequivocally "yes."

The HTSUS does not define the term "furniture."  As the Court of Appeals explained in

storeWALL, however, Chapter Note 2 to Chapter 94 makes it clear that merchandise is classifiable

under heading 9403 of the HTSUS only if the merchandise is "designed for placing on the floor or

ground," or if the merchandise falls with certain specified exceptions.  *See* Chapter Note 2 to

Chapter 94, HTSUS;[14] storeWALL, 644 F.3d at 1363; *see also* Def.'s Brief at 8-9; Def.'s Reply

---

Note 2 to Section XV:

Throughout the tariff schedule, the expression "parts of general use" means:

(a)     Articles of heading 7307, 7312, 7315, 7317, or 7318 and similar articles of other base metals;

(b)     Springs and leaves for springs, of base metal, other than clock or watch springs (heading 9114); and

(c)     Articles of heading 8301, 8302, 8308 or 8310 and frames and mirrors, of base metal, of heading 8306.

Section Note 2 to Section XV, HTSUS.

[14]Chapter Note 2 to Chapter 94 provides, in relevant part:

The articles (other than parts) referred to in headings 9401 to 9403 are to be classified in those headings only if they are designed for placing on the floor or ground.

The following are, however, to be classified in the above-mentioned headings even if they are designed to be hung, to be fixed to the wall or to stand one on the other:

(a) Cupboards, bookcases, other *shelved furniture* and *unit furniture*;

Brief at 2. And, as the Court of Appeals further explained, one of those specified exceptions covers – and thus includes within the definition of "furniture" – "[c]upboards, bookcases, other *shelved furniture* and *unit furniture*," even if such merchandise is not designed for placing on the floor or ground and is instead "designed to be hung, to be fixed to the wall or to stand one on the other." *See* Chapter Note 2(a) to Chapter 94, HTSUS (emphases added); storeWALL, 644 F.3d at 1363; *see also* Pl.'s Brief at 7; Def.'s Brief at 9; Def.'s Reply Brief at 2-3.[15]

The Court of Appeals acknowledged in storeWALL that the HTSUS does not define the term "unit furniture." *See* storeWALL, 644 F.3d at 1363. However, the Court of Appeals endorsed the definition of "unit furniture" devised by the Court of International Trade, drawing on "dictionary definitions, Explanatory Note requirements, and [the 1971] Brussels Nomenclature Committee Report." *See* storeWALL, 33 CIT at ____, 675 F. Supp. 2d at 1204; *see also* storeWALL, 644 F.3d at 1363.

Specifically, in storeWALL, the Court of International Trade explained that, although neither the Chapter Notes nor the Explanatory Notes define "unit furniture," the Explanatory Notes make it clear that "unit furniture" must be "designed to be hung, to be fixed to the wall or to stand one on the other or side by side, for holding various objects or articles." *See* storeWALL, 33 CIT at ____,

_____

Chapter Note 2 to Chapter 94, HTSUS (emphases added).

[15]In its briefs, which predate the Court of Appeals' decision in storeWALL, Container Store claims that its merchandise is properly classified under HTSUS heading 9403 as "shelved furniture," rather than "unit furniture." *See, e.g.,* Pl.'s Brief at 7-9, 11; Pl.'s Reply Brief at 1, 5-6, 10-11; Pl.'s Sur-Reply Brief at 2-3, 7, 9-10, 12. As discussed herein, however, the elfa® system falls squarely within the definition of "unit furniture" adopted by the Court of Appeals in storeWALL. In any event, whether the elfa® system is deemed "unit furniture" or "shelved furniture," the outcome of the analysis here would be the same.

675 F. Supp. 2d at 1204 (*quoting* General Explanatory Notes, Chapter 94, at (4)(B)(i) (1996)

(identical to 2002 edition in all relevant respects)).  The court further observed that the Explanatory

Notes expressly exclude from coverage under Chapter 94 "other *wall fixtures such as coat, hat and*

*similar racks*, key racks, clothes brush hangers, and newspaper racks."  *See* storeWALL, 33 CIT at

____, 675 F. Supp. 2d at 1204 (*quoting* General Explanatory Notes, Chapter 94 (1996) (identical

to 2002 edition in all relevant respects)) (emphasis added).  The court also took note of the Brussels

Nomenclature Committee Report, which "emphasizes that 'unit furniture' is adaptable to consumer

tastes and needs."  *See* storeWALL, 33 CIT at ____, 675 F. Supp. 2d at 1204 (*citing* Nomenclature

Committee, 26th Session, Report (April 14, 1971)).  Finally, the court looked to relevant dictionary

definitions of the term "unit," which focus essentially on the ability to use a "unit" in combination

with other complementary components of furniture or equipment to form a larger whole.  *See*

storeWALL, 33 CIT at ____, 675 F. Supp. 2d at 1204 (citations omitted).

Thus, according to the definition derived by the Court of International Trade and adopted

by the Court of Appeals, "unit furniture" is defined (for purposes of the HTSUS) as:

[A]n item

(a) fitted with other pieces to form a larger system or which is itself composed of
smaller complimentary items,

(b) designed to be hung, to be fixed to the wall, or to stand one on the other or side
by side, and

(c) assembled together in various ways to suit the consumer's individual needs to
hold various objects or articles, but

(d) exclud[ing] other wall fixtures such as coat, hat and similar racks, key racks,
clothes brush hangers, and newspaper racks.

storeWALL, 644 F.3d at 1361 (*quoting* storeWALL, 33 CIT at ____, 675 F. Supp. 2d at 1204); *see also* storeWALL, 644 F.3d at 1363 (noting that Court of International Trade "properly define[d] 'unit furniture' in light of the Chapter Notes").

Under the storeWALL definition, a completed system of elfa® components such as a top track and hanging standards, fitted with accessory components like drawers, baskets, and/or shelves, constitutes "unit furniture," because it consists of components that are fitted together with other pieces to form a larger system, it is designed to be hung on or fixed to a wall, and it is assembled together so as to suit specific individual consumers' particular needs to organize and store various objects or articles.  The Government does not fundamentally dispute this point.

Instead, the gravamen of the Government's argument is that a completed assembly of elfa® components does not *always* constitute "shelved" or "unit" furniture, because consumers in some instances may choose to accessorize top tracks only with elfa® hooks (as opposed to drawers, baskets, shelves, and/or other elfa® components).  *See* Def.'s Reply Brief at 6 (asserting that "elfa configurations" can include "simply top tracks and hooks (no shelves)"); *id.* at 6, Exhs. P, Q (photos from elfa® utility catalogue, depicting "the use of top tracks with various hooks only – no hanging standards and no shelves," cited as "an example of how top tracks and hooks can be used to simply suspend various items" on a wall).  According to the Government, an elfa® configuration featuring only a top track and hooks is a type of "wall fixture" such as a "coat, hat [or] similar rack[]," which is expressly excluded from classification under heading 9403 by the Explanatory Notes to Chapter 94.  *See* General Explanatory Notes, Chapter 94 (2002) (specifying that "[i]t therefore follows that . . . Chapter [94] *does not cover* other wall fixtures such as coat, hat and similar racks . . . ."); *see*

*also, e.g.*, Def.'s Reply Brief at 9.

But the argument that the Government advances in this case was expressly rejected by the Court of Appeals in <u>storeWALL</u>. The Court of Appeals there flatly dismissed the notion that "a completed storeWALL system utilizing only hooks is 'merely a rack,' and therefore, excluded from the . . . definition of 'unit furniture.'" *See* <u>storeWALL</u>, 644 F.3d at 1364. The Court of Appeals explained that the "fungibility" of the system as a whole (the feature that is emphasized by the Government here) "is due entirely to the system's versatility and adaptability, characteristics that are the hallmark of unit furniture." *See id.* The Court of Appeals further underscored the difference between "unit furniture" – such as a storeWALL system or an elfa® system – and "wall fixtures such as coat, hat and similar racks," which are excluded from classification as "furniture" by the General Explanatory Notes to Chapter 94 (quoted above):

> The versatility and adaptability of a completed . . . system is the reason that such a system, equipped only with hooks, is dissimilar to wall fixtures such as coat, hat and similar racks. An end user may add shelving, cupboards, baskets, etc. to a storeWALL [or elfa®] system initially equipped only with just hooks. Indeed, the end user could remove all of the hooks and replace them with other accessories. However, a coat rack, a hat rack, or any conceivable "similar rack" does not possess that same flexibility. One day a storeWALL [or elfa®] system could only have hooks, the next it could only contain shelving – but a coat rack will always be just a coat rack.

<u>storeWALL</u>, 644 F.3d at 1364.

The Court of Appeals concluded that "[t]he fact that the end user has the option with the storeWALL system to add or subtract accessories is the very reason any such system is unit furniture." *See* <u>storeWALL</u>, 644 F.3d at 1364. The Court of Appeals therefore held that, "[e]*ven if equipped only with hooks*, the storeWALL system retains the essential versatility and adaptability

that is the very essence of unit furniture," and is properly classifiable under heading 9403 of the HTSUS. *See id.* (emphasis added).

The Court of Appeals' analysis in storeWALL applies with equal force here, and counsels the same result. The fact that an elfa® system (like a storeWALL system) does not always include shelving, and – indeed – may consist of only a top track and hooks, is of no moment. In the words of the Court of Appeals, even if accessorized solely with hooks, it is the very "versatility and adaptability" of systems such as the elfa® system and the storeWALL system that render them "unit furniture" and distinguish them from the run-of-the-mill "coat, hat and similar racks" that are specifically excluded from classification as "furniture." *See* storeWALL, 644 F.3d at 1364. In sum, a complete elfa® system – like a complete storeWALL system – constitutes "unit furniture" and is classifiable under heading 9403.

Moreover, just as the Court of Appeals held that the components at issue in storeWALL were classifiable as "parts" of unit furniture, so too the elfa® top tracks and hanging standards at issue here are similarly classifiable as "parts" of unit furniture. *See* storeWALL, 644 F.3d at 1364. Much like the components at issue in storeWALL, which were "dedicated solely for use with a completed storeWALL system," elfa® top tracks and hanging standards have no general or generic applications and are "dedicated solely for use with a completed [elfa®] system." *See id.*; *see also* Pl.'s Brief at 9-11; Pl.'s Reply Brief at 7. The top tracks and hanging standards are therefore properly classified under HTSUS subheading 9403.90.80, which covers "Other furniture and parts thereof: Parts: Other: Other." *See* Subheading 9403.90.80, HTSUS.[16]

_____

[16]Because the components at issue in storeWALL were made of plastic, they were classified under subheading 9403.90.50. *See* storeWALL, 644 F.3d at 1360, 1364. In contrast, the elfa® components at issue here are made of epoxy-bonded steel. They are therefore properly classified

## IV. <u>Conclusion</u>

For all the reasons set forth above, elfa® "top tracks" and "hanging standards" are properly classified under subheading 9403.90.80 of the HTSUS.  Container Store's motion for summary judgment is therefore granted, and the Government's cross-motion for summary judgment is denied.

Judgment will enter accordingly.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway
Judge

Decided:  October 26, 2011
          New York, New York

---

under subheading 9403.90.80.

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE CONTAINER STORE,<br><br>                    *Plaintiff*,<br><br>          v.<br><br>UNITED STATES,<br><br>                    *Defendant*. | :<br>:<br>:<br>:<br>:    Court No. 05-00385<br>:<br>:<br>: |

## **JUDGMENT**

This action having been duly submitted for decision; and the Court, after due deliberation, having rendered a decision herein;

NOW, therefore, in conformity with said decision, it is

ORDERED that Plaintiff's motion for summary judgment be, and hereby is, granted; and it is further

ORDERED that Defendant's cross-motion for summary judgment be, and hereby is, denied; and it is further

ORDERED that the subject merchandise is classifiable as "Other furniture and parts thereof: Parts: Other: Other," under subheading 9403.90.80 of the Harmonized Tariff Schedule of the United States ("HTSUS") (2002); and it is further

ORDERED, ADJUDGED, and DECREED that the Bureau of Customs and Border Protection of the U.S. Department of Homeland Security shall reliquidate all subject entries in accordance with the opinion of the Court under the above-referenced HTSUS subheading and shall refund to Plaintiff any excess duties paid, together with interest thereon as provided by law.

                                        /s/ Delissa A. Ridgway
                                        _____
                                        Delissa A. Ridgway, Judge

Dated:  October 26, 2011
          New York, New York